Filed 6/24/16  Paymah v. Los Angeles Community College Dist. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EWAN E. PAYMAH,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>LOS ANGELES COMMUNITY<br>COLLEGE DISTRICT,<br><br>　　　　Defendant and Respondent. | B263975<br><br>(Los Angeles County<br>Super. Ct. No. BC514184) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael M. Johnson, Judge.  Affirmed.

　　　　Ewan E. Paymah, in pro. per., for Plaintiff and Appellant.

　　　　Best Best & Krieger, Cynthia M. Germano and Sarah R. Mohammadi, for Defendant and Respondent.

_____

Plaintiff Ewan E. Paymah appeals from a judgment entered against him after the trial court granted summary judgment in favor of defendant Los Angeles Community College District (District). Plaintiff contends triable issues of fact remained and the trial court erred by denying his motion to continue the summary judgment motion. We disagree and affirm.

## BACKGROUND

### 1. Allegations of the operative complaint

Plaintiff, who was born in Liberia, was employed in various positions by the District from February of 1993 until December of 2012, when he alleges he was constructively discharged through, inter alia, retaliation and discrimination. The operative third amended complaint (TAC) asserts a "retaliation" cause of action and alleges numerous instances of retaliation against plaintiff for filing internal grievances or complaints with the Department of Fair Employment and Housing (DFEH) and the Equal Employment Opportunity Commission alleging discrimination against him on the basis of race, color, religion, and national origin. These alleged incidents of retaliation include placing plaintiff on administrative leave in 2003; conspiring to prevent plaintiff from obtaining a position of associate vice president in 2003; constructively demoting him in 2007; interviewing, hiring, and failing to terminate an external Caucasian candidate for a provisional college fiscal (or financial) administrator (CFA)[1] position in 2009; denying plaintiff's request for a transfer to "B-shift" in 2010 or 2012;[2] a transfer from bookstore manager and union steward to accounting analyst at an unspecified time; and denial of a promotion to CFA in May of 2010. The TAC alleges most of the same incidents and events as the bases for its "discrimination" cause of action.

---

[1] The TAC provides two definitions for CFA: "College Fiscal Administrator" and "College Financial Administrator."

[2] Paragraph 20 of the TAC alleges the denial of a shift change occurred in 2010, but paragraphs 21 through 27 refer to communications regarding this denial in 2012.

The TAC also alleges numerous statements by individuals that plaintiff considers defamatory, but the trial court sustained a demurrer to his slander cause of action without leave to amend. Three individuals named as defendants (Karen Martin, Leonara Saunders, and Jamillah Moore) successfully demurred to the second amended complaint and the TAC. By the time of the summary judgment motion, the District was the only remaining defendant.

## 2. Plaintiff's exhaustion of administrative remedies

As established through judicial notice and plaintiff's admissions in the context of the District's motion for summary judgment, plaintiff filed complaints with the DFEH and the EEOC regarding some of the matters alleged in the TAC on four occasions.

The first such complaint, filed January 30, 2004, alleged that plaintiff was put on administrative leave, his "bumping rights were suspended pending an audit," and plaintiff believed this was in retaliation for him filing discrimination complaints. The DFEH issued a right-to-sue notice on January 30, 2004, and the EEOC issued a right-to-sue notice on September 20, 2004.

The second administrative complaint, filed November 21, 2007, alleged that plaintiff's work was transferred to an Hispanic woman and he was reassigned to the accounting/business office. Plaintiff believed these actions were based on racial, age, and national origin discrimination. The DFEH issued a right-to-sue notice on November 30, 2007, and the EEOC issued its right-to-sue notice on August 4, 2009.

Plaintiff filed his third administrative complaint on November 19, 2010. It alleged he was "denied the promotion" to "College Fiscal Administrator" in May of 2010 as a result of discrimination on the basis of race, color, religion, and national origin, as well as retaliation for "filing union grievances and complaining about discrimination." The DFEH issued a right-to-sue notice on November 19, 2010, and the EEOC issued its right-to-sue notice on April 8, 2013.

In his fourth administrative complaint, filed February 16, 2013, plaintiff alleged he was "denied change to B-shift which were previously approved; denied adjusted

3

differential salary" on or about October 10, 2012. He alleged this was retaliation for his filing of the complaint addressed in the preceding paragraph. The DFEH issued a right-to-sue notice on February 28, 2013, and the EEOC issued its right-to-sue notice on August 23, 2013.

### 3.     The District's summary judgment motion

The District filed a motion for summary judgment or summary adjudication of issues that asserted the following theories: (1) the statute of limitations barred plaintiff from litigating claims made in the first two DFEH/EEOC complaints described in the preceding section; (2) plaintiff failed to exhaust his administrative remedies with respect to many actions and incidents alleged in the TAC; (3) as to the two matters for which plaintiff exhausted his administrative remedies, (a) he could not establish a prima facie case of discrimination or retaliation and (b) the District had legitimate, nonretaliatory and nondiscriminatory reasons for its actions and plaintiff could not show evidence of pretext. Plaintiff filed opposition to the motion.

The trial court granted the District's request for judicial notice regarding the four DFEH/EEOC complaints and associated right-to-sue notices, denied an "oral motion by Paymah to continue the hearing" as untimely and unsupported, and overruled plaintiff's objections to the District's evidence. The court then granted the motion for summary judgment. It explained that "both causes of action are barred to the extent that [they] are based on facts and claims alleged in" the first two DFEH/EEOC complaints because plaintiff filed the instant action on July 3, 2013, after his time to sue on those complaints elapsed. The court's written order for entry of summary judgment also states, "Moreover, Paymah stated at the hearing on the Motion that neither his first or second causes of action are based on the allegations made in [the first two DFEH/EEOC complaints]."

Next, "to the extent that Paymah's first cause of action for retaliation and/or second cause of action for discrimination are based on facts and claims not alleged in any timely filed DFEH or EEOC charge, the causes of action are jurisdictionally barred."

4

The court then set forth specific allegations from the TAC that it explained were never asserted in a DFEH/EEOC complaint.

Next, the trial court ruled that the retaliation cause of action "fails as a matter of law because the undisputed facts established that the District had legitimate nondiscriminatory reasons for (1) its decision not to promote Paymah to the permanent CFA position in 2010 and (2) its decision to deny Paymah's request for a transfer from the A-Shift to the B-Shift in 2012, and Paymah has failed to raise a triable issue of fact that the District's articulated reasons were pretextual." The court then ruled that the discrimination cause of action also failed upon its merits due to the same legitimate nondiscriminatory reasons for not promoting plaintiff to the permanent CFA position.

## DISCUSSION

### 1. Principles regarding summary judgment motions

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A triable issue of material fact exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion." (*Ibid.*) The moving party also bears the initial burden of producing evidence "to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Ibid.*)

A defendant moving for summary judgment must show, with respect to each of plaintiff's causes of action, that either one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Upon such a showing, the burden shifts to the plaintiff to prove the existence of a triable issue of material fact regarding the element or defense addressed by the defendant's motion. (*Ibid.*) "[A] party may not rely on his own pleading as a factual source on a motion for summary judgment." (*Romak Iron Works v. Prudential Ins. Co.* (1980) 104 Cal.App.3d 767, 775 (*Romak*).)

5

We review a trial court's grant of summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) We view all of the evidence in a light favorable to the responding party, liberally construing the responding party's evidence while strictly scrutinizing the moving party's showing, and resolving any doubts or ambiguities in favor of the responding party. (*Id.* at p. 768.) Evidentiary objections made by the parties—either at the hearing on the summary judgment motion or in writing before the hearing—are preserved on appeal, even if the trial court neglects its duty to rule upon them. (*Reid v. Google* (2010) 50 Cal.4th 512, 531–532.)

## 2. Plaintiff is jurisdictionally barred from pursuing most of the allegations in the TAC.

Plaintiff argues the trial court had jurisdiction over his retaliation and discrimination causes of action because he exhausted his administrative remedies and filed a timely suit. He cites the right-to-sue notices dated February 28, 2013 (DFEH), and August 23, 2013 (EEOC), both of which pertain to the fourth DFEH/EEOC complaint regarding denial of a transfer to B-shift. No one disputes that plaintiff exhausted his administrative remedies and filed a timely action with respect to the subject matter of the third and fourth DFEH/EEOC complaints. To the extent plaintiff intended to contend that his suit was timely and he exhausted administrative remedies with respect to *all* allegations in the TAC, not just the failure to hire him for the permanent CFA position and the denial of a change to B-shift, we briefly address these points.[3]

### a. Exhaustion of administrative remedies and statute of limitations

Before an employee may sue on a claim of retaliation or discrimination, he or she must exhaust available administrative remedies by filing a timely complaint with the

_____

[3] Notwithstanding plaintiff's denial in the trial court that his causes of action were based upon incidents alleged in the first and second administrative complaints, he has repeatedly asserted these incidents and those as to which no administrative complaints were filed in support of his opposition to the summary judgment motion and in his appellate briefs.

6

DFEH or the EEOC. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70; Gov. Code, § 12960, subd. (b);[4] 42 U.S.C. § 2000e-5, subd. (a).)

Generally, a plaintiff must file suit within one year after the date of the DFEH's right-to-sue notice or within 90 days of the date of the EEOC's right-to-sue notice. (§ 12965, subd. (b); 42 U.S.C. § 2000e-5, subd. (f)(1); *Edwards v. Occidental Chemical Corp.* (9th Cir. 1990) 892 F.2d 1442, 1445.) However, where an employee's complaint is concurrently filed with both the DFEH and the EEOC and the DFEH defers investigation to the EEOC and issues the employee a right-to-sue notice, the one-year statute of limitations is tolled and will not expire until "the federal right-to-sue period to commence a civil action expires, or one year from the date of the right-to-sue notice by the [DFEH], whichever is later." (§ 12965, subd. (d).)

**b.    Plaintiff did not meet the statute of limitations with respect to claims set forth in his first and second DFEH/EEOC complaints.**

With respect to each of plaintiff's four complaints, the DFEH deferred to the EEOC and issued a right to sue notice. Accordingly, plaintiff receives the benefit of the aforementioned tolling provision. Nonetheless, plaintiff failed to file this action within the statutory period for claims raised in his first and second DFEH/EEOC complaints, which are therefore time-barred, as the trial court held.

With respect to plaintiff's first complaint, regarding administrative leave and suspension of his "bumping rights," the DFEH issued a right-to-sue notice on January 30, 2004, and the EEOC issued a right-to-sue notice on September 20, 2004. Plaintiff was therefore required to filed suit on these claims no later than January 30, 2005, more than eight years before this action was filed on July 3, 2013.

With respect to plaintiff's second complaint, regarding the transfer of plaintiff to a different office and the transfer of his work to another employee, the DFEH issued a right-to-sue notice on November 30, 2007, and the EEOC issued its right-to-sue notice on August 4, 2009. Plaintiff was therefore required to file suit on that claim no later than

---

[4] Undesignated statutory references pertain to the Government Code.

November 2, 2009, which was more than three and one-half years before this action was filed.

Accordingly, the incidents and events set forth in the first and second DFEH/EEOC complaints are not a proper basis for any of plaintiff's causes of action in this case.

**c.      Plaintiff did not exhaust his administrative remedies as to incidents and actions not asserted in one of the four DFEH/EEOC complaints.**

The following allegations from the TAC were not set forth in any of plaintiff's four DFEH/EEOC complaints: (1) Karen Martin and Arthur Tyler conspired to fail plaintiff in an oral interview in or around 2003 (TAC ¶¶ 13-14); (2) the associate vice president position was changed to assistant vice president in or around 2003, resulting in plaintiff's ineligibility for the position (TAC ¶ 15); (3) plaintiff was "constructively demoted" from accounting analyst to accounting clerk[5] (TAC ¶¶16, 48); (4) matters pertaining to the hiring of the provisional CFA, failure to terminate the provisional CFA, and refusal to recertify the eligibility list (TAC ¶¶ 17-19, 49); (5) statements by Moore about plaintiff having sex with a coworker in his office (TAC ¶¶ 56-57); and (6) plaintiff was forbidden "to mention the word 'God' on the Los Angeles City College campus" (TAC ¶ 63).

Accordingly, plaintiff failed to exhaust his administrative remedies with respect to these events, incidents, and statement, and they are not proper bases for any of plaintiff's causes of action in this case. The only two events or incidents for which plaintiff both exhausted his administrative remedies and met the statute of limitations are the selection of a candidate other than plaintiff for the permanent CFA position in 2010 and the denial of plaintiff's request for a transfer to the B-shift in 2012.

---

[5] It is possible this "constructive demotion" is the same event alleged in defendant's second DFEH/EEOC complaint, but plaintiff failed to assert this in response to the summary judgment motion. Given the statute of limitations bar regarding the claim in the second complaint, the possibility this is the same claim is of no consequence.

**3. Principles regarding unlawful employment discrimination and retaliation claims**

It is an unlawful business practice for an employer "because of the race, religious creed, color, national origin, ancestry. . . of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment" or "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part," e.g., a complaint filed with the DFEH or the EEOC. (§ 12940, subds. (a), (h).)

At trial, a plaintiff must first establish a prima facie case of discrimination or retaliation. In order to state a prima facie discrimination claim, "the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).) A prima facie retaliation claim requires showing that "(1) [the plaintiff] engaged in a 'protected activity,' (2) the employer subjected [the plaintiff] to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) The plaintiff's burden at this stage is not onerous, but he or she must at least present evidence of actions " ' "by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.' " ' " (*Guz*, at p. 355.)

If, at trial, the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to the employer to rebut the presumption with evidence that it acted for a legitimate, nondiscriminatory reason. (*Guz*, *supra*, 24 Cal.4th

9

at pp. 355–356.)  If the employer carries this burden, the presumption of discrimination disappears.  (*Id.* at p. 356.)

The employee, who retains the burden of persuasion, then has " ' "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.  This burden now merges with the ultimate burden of persuading the court that [the employee] has been the victim of intentional discrimination.  [The employee] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." ' " (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 150 (*Sada*).)  The employee cannot " ' "simply show the employer's decision was wrong, mistaken, or unwise.  Rather, the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [. . . asserted] non-discriminatory reasons.' " ' " ' " (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 389.)  "In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias."  (*Guz*, *supra*, 24 Cal.4th at p. 356.)

When the employer files a motion for summary judgment in a retaliation case, however, the burdens are reversed and the employer bears the burden of " 'present[ing] admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors.' " (*Sada*, *supra*, 56 Cal.App.4th at p. 150.)  If the employer succeeds in doing so, it " 'will be entitled to summary judgment *unless the* [*employee*] *produces admissible evidence which raises a triable issue of fact material to the* [*employer's*] *showing.*  In short, . . . "the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury." ' " (*Ibid.*, original italics.)

10

" 'The central issue is and should remain whether the evidence as a whole supports a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus. The employer's mere articulation of a legitimate reason for the action cannot answer this question; it can only dispel the *presumption* of improper motive that would otherwise *entitle* the employee to a judgment in his favor. Thus, citing a legitimate reason for the challenged action will entitle the employer to summary judgment only when the employee's showing, while sufficient to invoke the presumption, is *too weak* to sustain a reasoned inference in the employee's favor.' " (*Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 755.) "Proof of discriminatory intent often depends on inferences rather than direct evidence. [Citation.] And because it does, 'very little evidence of such intent is necessary to defeat summary judgment.' [Citation.] Put conversely, summary judgment should not be granted unless the evidence cannot support any reasonable inference for plaintiff." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 283.)

### 4. Observations regarding the parties' separate statements

In support of its summary judgment motion, the District submitted a separate statement of 170 facts it contended were undisputed, together with admissible evidence that supported every fact except fact 7, which plaintiff did not dispute, and identical facts 68 and 155, which plaintiff disputed as unsupported by the evidence cited by the District. In his responsive separate statement of facts plaintiff expressly agreed that a small number of facts were undisputed, failed to state that a greater number of facts were disputed, and failed to cite any relevant, admissible evidence that supported his claims that the remaining facts were disputed.[6] In sum, he failed to establish a dispute with

---

[6] Indeed, as far as the appellate record reveals, plaintiff cited no evidence in support of several facts he claimed to dispute, such as facts 72, 74, 75, 79, 81, 82, and 84. While it is possible that a citation at the bottom of the page was lost through photocopying, such is the state of the appellate record. Moreover, plaintiff did not designate any of the separate statements as part of the appellate record. We have them only through the District's augmentation of the record.

11

respect to any of the District's facts, even though he set forth abundant argument with respect to most of them, both in his opposition to the District's separate statement and his declaration.

Plaintiff also filed his own separate statement of 138[7] additional, purportedly disputed facts, many of which were actually argument,[8] but plaintiff again failed to support any of them with relevant, admissible evidence. The District disputed, at least in part, all but two of plaintiff's additional facts and objected to plaintiff's evidentiary support for all remaining facts. Plaintiff cited as support for his facts only the allegations of the TAC,[9] which provided no evidentiary support for anything, or his own 46-page declaration, which was rife with arguments, conclusions, hearsay, and speculation, and often failed to demonstrate any personal knowledge. In addition, many of plaintiff's facts pertained to events and incidents as to which plaintiff either failed to exhaust administrative remedies or failed to comply with the statute of limitations.[10] Other facts were simply irrelevant because they lacked tendency in reason to prove or disprove any matter pertinent to the District's motion or plaintiff's opposition thereto.[11] A few of

---

[7] After the first 119, plaintiff's additional facts were repeatedly misnumbered. Thus there were three different facts numbered 110, and so on. Of necessity, we refer to them by the numbers they should have had if correctly numbered.

[8] See plaintiff's additional facts 8, 30-36, 40, 42-43, 58, 60-67, 69, 83, 92, 95, 97, 100-101, 114-121, 123, 130, 133-136. We sustain the District's and our own objections that these "facts" are actually impermissible argument or legal conclusions, not facts.

[9] See plaintiff's additional facts 1-4, 6, 7, 9, 26-31, 36-38, 59-60, 67, 80, 87-88, 94, 98-99, and 121-123, for which the only cited support is the TAC. We sustain the District's objection to these facts on that basis. (*Romak*, *supra*, 104 Cal.App.3d at p. 775.)

[10] See plaintiff's additional facts 9-18, 61-65, and 113. We sustain the District's objections that these facts are irrelevant.

[11] See plaintiff's additional facts 45, 96, 126, and 134-138. We sustain the District's objections that these facts are also irrelevant.

12

plaintiff's "facts" were expressly his own beliefs regarding what transpired or the reasons therefor, and he thus admitted a lack of personal knowledge.[12]

**5.     No triable issues of fact exist with respect to plaintiff's claims of retaliation and discrimination based upon the selection of another person for the permanent CFA position.**

With respect to the permanent CFA position, the undisputed facts and effectively undisputed facts (i.e., those plaintiff said he disputed but failed to cite any relevant, admissible evidence that actually created any dispute) and evidence submitted in support of the motion established the following matters.  Plaintiff was employed by the District as a full-time classified employee from 1993 until his resignation at the end of  2012.  From July of 2004 to the date of his resignation, plaintiff held the position of accounting analyst.  From 1995 until at least the date the District filed its summary judgment motion, plaintiff was also employed by the district as a part-time adjunct professor.

The District's hiring process is based on the Merit System Articles of the Education Code and the District's Personnel Commission rules.  Candidates are tested for their knowledge, skills, and abilities and are placed on eligibility lists with their rank determined by their scores in the testing process.  Pursuant to the Personnel Commission's rule 635, interviews are first offered to the top three persons on the eligibility list, but if an eligible person is not available, i.e., he or she does not respond to or declines the offer of an interview or does not appear for the interview, an eligibility "rank" is "cleared" and a lower-ranked candidate from the eligibility list can be offered an interview.  Any candidate who accepts an interview offer and interviews may ultimately be selected for the job.

The District's Personnel Commission conducted a complete recruitment and testing process for the permanent CFA position and created an eligibility list upon which

---

[12] See plaintiff's additional facts 8, 11, 68, 94, 101, 106, 109, and 112.  We sustain the District's lack of personal knowledge objections to the portions of plaintiff's declaration cited in support of these facts, but note that fact 94 cites only the TAC.

plaintiff was ranked first. Rolf Schleicher, who had been serving as the provisional CFA, was ranked fifth on the eligibility list. Los Angeles Community College (LACC) was responsible for offering interviews to the eligible candidates and to that end sent letters to the first three people on the eligibility list. Plaintiff and the second-ranked candidate on the eligibility list accepted the invitations to be interviewed, but the third- and fourth-ranked candidates either did not respond to the letter or declined the offer of an interview. Accordingly, Schleicher was offered and accepted an interview.

Plaintiff, the second-ranked candidate, and Schleicher were interviewed by a committee of LACC employees (Paul Carlson, Eric Peters, and Britt Hastey) with a fourth LACC employee (Ronda Goudeau) sitting in "as the EEOC representative" to ensure "that the interview process was fair and impartial." Plaintiff claims that the ultimate selection of someone other than himself for the permanent CFA position resulted from discrimination on the basis of race, color, place of origin, and religion, as well as retaliation for his protected activities. However, none of the three individuals against whom the TAC alleges discriminatory or retaliatory animus (Martin, Saunders, and Moore) were part of the interview committee and no statements were made during the interview process to suggest or imply that the interview committee made any decision on the basis of an improper motive. The interview committee gave plaintiff the lowest score of the three candidates. One interviewer wrote on plaintiff's interview evaluation form that plaintiff "strayed from direct answers," "missed answering 5 questions," and "had questionable answers." That interviewer gave plaintiff an overall score of two out of five (five being best), which the form indicates meant that the candidate "should be employed only if no one more qualified is available for this assignment." Another interviewer wrote that plaintiff "did not communicate effectively" and was "not familiar with accounting terms." That interviewer gave plaintiff a score of three, which the form indicates meant that the candidate "meets basic qualifications, but not as well qualified as other candidates for this assignment." The third interviewer, who also gave plaintiff and overall score of three, wrote on his form that plaintiff lacked "technical terms" and

14

"technical process," and "had some trouble answering questions directly." Schleicher received the highest score and was hired for the position.

Plaintiff subsequently challenged Schleicher's selection. The District's Personnel Commission conducted an audit of the interview process and notified LACC that it had made a clerical error when addressing the letter it sent offering an interview to one of the candidates.[13] As a result, Schleicher's appointment was declared invalid and he was removed from the position, which LACC decided to leave vacant. The mistake had nothing to do with plaintiff, his race, national origin, religion, or his protected activity of filing grievances and complaints alleging discrimination and retaliation.

As for the three individuals whom plaintiff claimed bore discriminatory animus toward him—LACC President and Administrator Moore, Personnel Analyst Saunders, and the District's Personnel Director Martin—defendant failed to show his claims of animus were based on anything other than speculation and stray remarks. We first address Saunders. At his deposition, plaintiff testified that he believes that Schleicher was hired for the permanent CFA position because he and Saunders are both of German ancestry and were friends, but his belief about Saunders's ancestry was based solely upon a rumor around the campus. Plaintiff also believes that Saunders prevented him from being selected for the permanent CFA position because plaintiff is Christian, but he admitted in his deposition that she had never made any derogatory statements to him about his religion and that she was raised in a Christian family. Plaintiff further claims that Saunders showed him disrespect by once telling him to go find a job at a Jack-in-the-Box and on another occasion attempting to correct his spelling, when there was in fact no error. However, plaintiff admitted at his deposition that Saunders did not link either statement to his race, national origin, or any other improper basis. Plaintiff also admitted that he did not know what she was thinking when she made the Jack-in-the-Box comment and simply assumed her attempt to correct his spelling reflected her belief that he was incompetent.

---

[13] According to plaintiff, this was the third-ranked candidate.

15

Turning to Martin, plaintiff admitted at his deposition that she had never made any derogatory comments to him regarding his race, national origin or religion. In her declaration in support of the District's motion, Martin declared that she had "never made or provided input on any decisions or taken any action regarding Mr. Paymah's employment base[d] on the fact that he filed internal complaints or complaints with the DFEH or EEOC."

As for Moore, plaintiff testified at his deposition that she had never made any comments regarding his religion and had "not directly" made any derogatory comments about his race or place of origin, though he believed she had "indirectly" made one such comment through someone else. He testified that Linda Nash brought him a parcel from Moore's office and said, "You African[s] come to the U.S. in cargo ships," or something similar. Nash did not say that Moore had made that statement, but plaintiff believed that it must have come from Moore.

The foregoing was at least sufficient to establish that the District had legitimate, nondiscriminatory, nonretaliatory reasons for not selecting plaintiff for the permanent CFA position, namely that, through the process of apparently unbiased interviews, he scored the lowest of the three candidates interviewed and each member of the interview committee noted particular deficiencies in plaintiff's presentation that appear to have been pertinent to the qualifications for the CFA position. In addition, one interviewer's remark regarding plaintiff's unfamiliarity with accounting terms reflected not only upon plaintiff's qualifications, but also upon his credibility because, as numerous documents in the record demonstrate (including plaintiff's e-mails attached to the TAC and his declaration and exhibits submitted in opposition to the District's summary judgment), he held himself out as a certified public accountant with a license from Ohio. As for the college's mistake in misaddressing the interview offer letter to one of the eligible candidates, although plaintiff sees a nefarious plot at work, the only admissible evidence on this point is that there was an inadvertent error and the district invalidated the results of the interview process. Moreover, because that error did not prevent plaintiff from

interviewing and he scored the lowest of the three candidates interviewed, the error had no effect upon plaintiff's non-selection. Even if Schleicher had not interviewed, the person to whom the interviewing committee gave the second highest score would still have finished ahead of plaintiff. At best, absent the error, plaintiff might have received the second highest score, not the lowest score, but the job would still have been offered to the person with the highest score, not plaintiff. With respect to the three individual former defendants, the District established not only that they were not involved in selecting the permanent CFA but also that plaintiff's claim that they harbored discriminatory or retaliatory animus was unfounded.

Given the District's showing of legitimate, nondiscriminatory, nonretaliatory reasons for not selecting plaintiff for the permanent CFA position, the burden shifted to plaintiff to produce admissible evidence raising a triable issue of material fact regarding pretext. This he failed to do. His additional facts 66 through 93, 101 through 113, and 130 through 137 appear to have been intended to raise such a triable issue, but were not supported by *admissible* evidence. Plaintiff's declaration reiterated the content of many of the facts, but failed to demonstrate personal knowledge and often was based upon speculation and hearsay. Moreover, many of these facts were mere argument or allegations, some expressly framed in terms of plaintiff's beliefs, and many were either irrelevant or insufficient (even if established) to raise a triable issue of fact, such as plaintiff's "facts" regarding the hiring of Schleicher for a position at Los Angeles Mission College and his receipt of salary.

**6.       No triable issues of fact exist with respect to plaintiff's claim of retaliation based upon denial of his request to transfer to the B-shift.**

With respect to denial of plaintiff's request to transfer to the B-shift, the undisputed and effectively undisputed facts established that, in his position as accounting analyst, plaintiff was assigned to the A-shift, i.e., a 9/80 schedule with hours from 8:00 a.m. to 5:30 p.m. In September of 2012, plaintiff submitted a request to change to the B-shift, which starts no earlier than at 10:30 a.m. Employees on the B-shift "receive a pay

17

differential for the later shift." Plaintiff's request stated that the reason for the request was to direct and manage the student union building, which was not a duty related to his position as accounting analyst. Because plaintiff's request was complete and had all the required signatures from LACC, when it arrived at it the District's Personnel Commission for processing and approval, an administrative aide processed it. The aide's supervisor, Ute Severa, reviewed the request and identified a classification problem. The Personnel Commission denied the request because (1) plaintiff's permanent job classification was accounting analyst, which required assignment to the A-shift, and (2) the request for B-shift compensation was based upon duties unrelated to plaintiff's job classification as accounting analyst. Severa informed plaintiff by e-mail that his request could not be approved.

Although plaintiff claims the denial of his request to change from the A-shift to the B-shift was an act of retaliation for his protected activities, the denial had nothing to do with his prior grievances and complaints to the DFEH or the EEOC, but instead merely constituted enforcement of the District's classification system.

The foregoing was sufficient to establish that the District had legitimate, nonretaliatory reasons for denying plaintiff's request to change to the B-shift: Plaintiff requested the change to undertake duties (and receive more pay) unrelated to the duties of his accounting analyst position, and the request was therefore denied for these reasons, not as an act of retaliation for protected activity.

Given the District's showing of legitimate, nonretaliatory reasons for denying plaintiff's request to change to the B-shift, the burden shifted to plaintiff to produce admissible evidence raising a triable issue of material fact regarding pretext. Again he failed to meet this burden. His additional facts 20 through 29, 39, 41, 43 through 45, and 48 through 56 appear to have been intended to raise such a triable issue, but were not supported by *admissible* evidence. As was the case with the facts pertaining to his discrimination claim, plaintiff's declaration reiterated the content of many of the facts, but failed to demonstrate personal knowledge and often was based upon speculation and

18

hearsay. Moreover, many of these facts were mere argument or allegations and some were either irrelevant or insufficient (even if established) to raise a triable issue of fact. In particular, plaintiff's argument and facts regarding the effect of approval of the shift change at the college (as opposed to District) level were implicit in the facts established by the District and insufficient to create a triable issue of fact regarding the legitimacy of the District's reasons for denying the shift change. Plaintiff's assertion that the personnel director did not have such authority[14] and was required to comply with the college's approval was supported only by his assertions to the same effect in his declaration, for which he failed to demonstrate personal knowledge.

Accordingly, for the reasons set forth in this section and the preceding section, there were no triable issues of material fact with respect to either the retaliation or discrimination cause of action.

**7.      The trial court properly denied defendant's motion to continue the summary judgment motion.**

Plaintiff contends the trial court erred by denying his motion to continue the hearing on the summary judgment motion until after the hearing on his pending motion to compel production of documents. He contends he made the motion for a continuance in his opposition to the District's summary judgment motion, in his declaration, and orally at the hearing, as reflected in the trial court's order. We have examined plaintiff's opposition to the District's summary judgment motion and find no motion or even request for continuance. In one paragraph of his declaration plaintiff referred to his pending motion to compel and stated it "could accurately lead to further admissible evidence because [the District's] unwillingness to produce the requested documents . . . is not supported by any law." He did not, however, request a continuance. As for plaintiff's motion during the hearing, it is impossible to determine what, if any, showing plaintiff made in support of his request because the appellate record does not include a reporter's transcript. The only record is the trial court's order, which reflects that "the

---

[14] See plaintiff's additional facts 49-50, 52.

request was untimely and Paymah failed to make the requisite showing." Plaintiff had the burden of providing an appellate record sufficient to show the existence of reversible error, and his failure to do so requires that his claim be resolved against him. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

Code of Civil Procedure section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

" 'The nonmoving party seeking a continuance "must show: (1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. [Citations.]" [Citation.]' Generally speaking, the party seeking the continuance must 'provide supporting affidavits or declarations detailing facts that would establish the existence of controverting evidence.' " (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715.)

As far as the appellate record reveals, plaintiff's only justification for a continuance was that he had a discovery motion pending. He did not even make a conclusory assertion that facts essential to justify opposition may have existed, much less set forth any facts that would establish the existence of controverting evidence, as opposed to the existence of a pending discovery motion. Accordingly, as the trial court ruled, plaintiff failed to make the required showing.

## 8. Conclusion

For all of the reasons stated herein, the trial court properly granted the District's summary judgment motion.

20

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED.


                                          LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

21